

**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

---

*Robert A. Zauzmer*
*Direct Dial: (215) 861-8568*
*Facsimile: (215) 861-8618*
*E-mail Address: bob.zauzmer@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

March 30, 2020

<u>Via ECF</u>

The Hon. Anita B. Brody
United States District Judge
601 Market Street, Room 7613
Philadelphia, PA  19106

      Re:    United States v. Jeremy Rodriguez
                  No. 03-271

Dear Judge Brody:

      The government presents additional information pertinent to defendant Jeremy Rodriguez's motion for compassionate release, in support of our position that no extraordinary circumstances are presented warranting that relief, and that the general concerns regarding exposure to the coronavirus are most appropriately addressed by the Bureau of Prisons, not the Court.

      1. As the government explained at length in its response to the defendant's motion, the Court lacks authority to grant compassionate release based on an assessment of the likely charge and sentence under current law. On March 26, the first appellate decision on the issue agreed with the government's view. In *United States v. Saldana*, -- F. App'x --, 2020 WL 1486892 (10th Cir. Mar. 26, 2020) (not precedential), the panel held that compassionate release is not available based on a change in sentencing law that would produce a lower sentence today. The panel stated: "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." Accordingly, the court held, a court lacks jurisdiction to grant compassionate release on this basis.

The Hon. Anita B. Brody
March 30, 2020
Page 2

2. During the hearing on March 27, 2020, the Court inquired regarding the medical care available to inmates of FCI Elkton. In response, we provide this information.

The institution has a Health Services Unit that attends to the needs of inmates. It is staffed daily from 6 a.m. to 10 p.m., consistent with all accepted standards for correctional care. After those hours, a physician assistant or nurse practitioner is on call, with access to a physician if needed. The institution also accesses a large network of local specialists who come to the prison to provide medical services.

The Health Services Unit does not provide inpatient or intensive care. Salem Regional Medical Center in Salem, Ohio is used for general surgery inmates and is the closest hospital for life-threatening emergencies. Salem is located approximately 20 miles from FCI Elkton. It is a major regional institution, with full inpatient and intensive care facilities, but by contract, in ordinary times, FCI Elkton primarily uses Trumbull Regional Medical Center in Warren, Ohio, for inpatient and intensive care. Trumbull is located 42 miles from the institution. Trumbull is also a major regional medical institution, and is a designated Level III Trauma Center.

FCI Elkton also has access to other medical facilities in the region as necessary for neurological, rehabilitation, and other services.

3. On March 27, shortly after the hearing in this case, the President signed the CARES Act, the omnibus coronavirus relief bill. Section 12003(b)(2) of the Act greatly expands the authority of the Department of Justice to grant home confinement during the pendency of the emergency. As the government previously explained, 18 U.S.C. § 3624(c)(2) permits BOP to place an inmate on home confinement during the last six months of a custodial sentence, or for 10% of the sentence, whichever is less. Application of the statute leads to the estimate that Rodriguez will be eligible for home confinement in April 2021.

Section 12003(b)(2) of the CARES Act provides: "During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Thus, if and when the Attorney General makes the required finding, BOP will have essentially unlimited authority to transfer an inmate to home confinement during the national emergency.

The Hon. Anita B. Brody
March 30, 2020
Page 3

      4. The legislation only underlines the fact that BOP has the resources and expertise to address the impact of coronavirus on the inmate population, and this Court should defer to that. Even before the legislation was passed, courts in recent days denied motions for compassionate release premised, like Rodriguez's motion, solely on concern regarding COVID-19, without any unique medical concerns presented.

      In *United States v. Eberhart*, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020), the court stated: "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *Id.* at *2.

      In *United States v. Gileno*, 2020 WL 1307108 (D. Conn. Mar. 19, 2020), the Court concluded:

> With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno. The Court takes judicial notice of the fact that public health recommendations are rapidly changing. . . . But at this time the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated.

*Id.* at *4.

      In *United States v. Garza*, 2020 WL 1485782 (S.D. Cal. Mar. 27, 2020), the court likewise denied relief. In that case, the defendant reported two months ago to commence a 24-month sentence. The court stated:

> In this case, the Court is mindful of the serious risk COVID-19 poses for prison inmates. The Court further finds that Mr. Garza, because he was able to comply with all of the conditions of his pre-trial release and because he has no other criminal record, is a low-risk to reoffend if he is released. However, issues such as Mr. Garza's medical condition, the conditions and resources at [FCI] Terminal Island (including the availability of testing and treatment), and decisions as to which prisoners should be released because of the COVID-19 epidemic are better left to the Bureau of Prisons and its institutional expertise.

      Likewise, in *United States v. Hernandez*, 2020 WL 1445851 (S.D.N.Y. Mar. 25, 2020), the court found no authority to grant home confinement for the last four months of

The Hon. Anita B. Brody
March 30, 2020
Page 4

an inmate's term based on concern regarding COVID-19. The court added the suggestion, for the benefit of BOP, that a transfer to home confinement would be the court's preference. (In the government's view, a court should not grant compassionate release to an individual based only on a concern regarding the virus, but we state no objection if a court wishes to make a recommendation for BOP's consideration as it deals with the crisis.)

                              Respectfully yours,

                              WILLIAM M. McSWAIN
                              United States Attorney


                              */s Robert A. Zauzmer*
                              ROBERT A. ZAUZMER
                              Assistant United States Attorney
                              Chief of Appeals


cc:  Mira E. Baylson, Esq.